May it please the court. Good morning, your honors. Good morning, counsel. My name is Matthew Gnafa. I represent Rush University Medical Center in the appeal of this workers' compensation matter. Your honors, not every slip and fall of work is a compensable workers' compensation injury. I think we'd agree with that. The manifest weight of the evidence here indicates Petitioner fell for an unknown reason in a normal appearing and functioning staircase which could be used by the public and it was not her job to walk up and down those stairs. You said there was nothing wrong with the staircase? Is that what the evidence established? There was absolutely nothing wrong with the stairs? It has been alleged that a chip or a divot in the cement staircase caused the Petitioner to fall. When her recorded statement was taken, she did not mention this chip or divot in the stairs causing her to fall. It is not mentioned in the history of any of the medical records. At trial, she testified and confirmed at the time of her fall and when the recorded statement was taken, she did not know what caused her to fall. Hang on a second. At the hearing, didn't the claimant testify that portions of concrete were missing from the stairs at the place where she fell? That was her testimony, your honor. And she offered in the evidence several pictures of the stairs where she fell and the arbitrator stated, I quote, there is an the last step that the claimant's foot was on before her fall. So does this sound like there were no problems with the stairs? Are you interpreting it that way? I would put it to your honors that this is a perfectly functioning normal staircase which is very similar to any other staircase in any industrial or residential. There was no concrete that was missing. Portions of the concrete were missing. You're not disputing that? I'm not disputing that there were certain chips or small divots missing from this staircase. What I am disputing is that even if those chips exist, even if it's alleged that there was some hazard there in the staircase, it's not certain that such chip or divot actually caused the claimant, in this case, to fall, your honor. So the commission adopted the arbitrator's factual finding that the step where the claimant fell was in a condition of ill repair and that was a factor that caused the claimant to fall. So what evidence is there to the contrary that it had nothing to do with it? Well, we have the conflicting histories as pointed out by Commissioner Lambourne who dissented in the commission decision. She reported to the individual who took her statement that she didn't know what caused her to fall. It wasn't until she went back to the staircase, took her own photographs and respondent also submitted photographs and evidence, and then she basically put together a story that it must have been this chip that caused her to fall. And all that evidence was before the commission and the employer had the opportunity to argue it to the arbitrator in the commission and the commission weighed the evidence, decided what weight to give that evidence, what inferences to draw, and you lost. Correct, your honor. And you're making the same argument here. Correct, your honor. It was not a unanimous commission decision. So you're wanting us to re-weigh the evidence, basically. I also want you to apply the case law, though. We have the Baldwin case where, in fact, it was the claimant's job to walk up and down the stairs. She was a security guard there. And she created a story or conjecture or put together that it was a possibility that moisture from walking through the freezer gathered on her shoes and thus caused the slip and fall. But there we were affirming the commission denying benefits. That's true, your honor. In other words, we did not overrule the commission determining that that was speculation. Correct, your honor. Now, you're putting a lot of emphasis on her statement. When was her statement made? I don't know. I don't know what happened or whatever. What was that statement? I believe it was approximately two weeks after the incident. Was she hospitalized at the time or was she under high-dose narcotic pain medication at the time? It has been alleged that she was under some medication at the time the recorded statement was taken. But that still doesn't rule out the fact that she didn't know what caused her to fall. She went back afterwards and then pieced the story together. Couldn't it have been explained by the trauma? I mean, this woman was hospitalized. She had all these injuries. She was under medication. She didn't know what caused the fall or she didn't remember at the time because of everything that happened what caused the fall. Is there a little bit of a difference there? Even at the time of trial, she confirmed that when she fell, she didn't know what caused her to fall. So this was... How often does that happen for a lot of people? They fall and at the time they don't know why they fell. Exactly, your honor. We don't know why she fell. I would agree with you 100%. Well, the arbitrator says we do know why she fell. By the finding that she fell because of the defect in the stairway. That's a story that she pieced together that the arbitrator did agree with. I understand your position, your honor. Yes. We won't take any adverse influence to the characterization of the story. You know, in her brief, the petitioner does point out that it's extremely rare that the public would ever use this stairway. And that in her six years of working there, she hasn't seen anyone use it. On cross-examination, it was confirmed that the public could use it. It's pointed out in the briefs. I also want to point out, in the first cash case where compensability was denied, that was an employee badly injured. That was not a public area where the claimant in that case fell. And I just thought that was instructive in this case, comparing that that's not necessarily an open-and-shut factor, where it may not be the situation where the incident happened, would be an employee-only or not situation. It's the respondent's position that Commissioner Landrum was 100% correct in his dissent. He compared this case to that of the Caterpillar case, when the Supreme Court ruled that a worker was not subjected to a risk greater than that of the general public when he twisted his ankle on a curb in a parking lot. Again, there needs to be a connection between the employment and the injury for it to be compensable under the Act. Is there some evidence in this case, I'm trying to recall, that the claimant was in a hurry to get to where she was going? Does that make any difference? The fact that the claimant testified at trial that she was in a hurry leads one to the fact that this was done. Maybe she hurried down the stairs carelessly to get somewhere related to her work. I do understand where you're going with that comment, Your Honor. And again, this isn't something that was noted in the earlier history. It's something that was, it could be put out there. One interpretation could be made that she was coached that this testimony was formulated to make this fall within the case law. Now we've gotten into credibility. Now, if the commission had determined that they were going to believe that she didn't know why she fell, and that the story she took and she told at the arbitration hearing was nothing more than the creation of someone who knew that if she kept saying she didn't know why she fell on her first case, she wasn't going to collect at all, do you think we'd be ruling in favor of your opponent when she appealed and said it was against the manifest way of the evidence? No. Credibility is for the commission. The commission believed her when she testified and put her, as you suggest, story together. And that's their job. That's not our job. I may not have believed her, but they did. I do understand your point. Your dissent, Commissioner, may not have, but she wasn't in the majority. Correct. It's just, it seems more and more likely that as long as you say the right things, you're going to get a compensable case. If believed, credibility discrimination. Of course. Credibility is always going to be issued in these cases, Your Honor. If there's no further questions, I think I'll just briefly conclude. Not a question, but just an observation, and a word of caution in the statement of facts. There's quite a bit of argument. In fact, one of the paragraphs you preface it by saying without meaning to be argumentative, and then the ensuing paragraphs are purely argument. Please don't do that in the statement of facts. Understood, Your Honor. I apologize for that. We'll save that for the argument section moving forward. Petitioner's theory she fell from a small divot is nothing more than speculation. Speculation is not enough to lead to the conclusion that this injury arose out of her employment. The inherent risk this petitioner faced in traversing the stairs is a risk faced by the general public and not incidental to her employment. Commissioner Lamborn correctly concluded, based on the facts and conflicting histories of her statements surrounding the incident, that he would find that this was an unexplained fall, a fall which was not connected to her employment. As such, the petitioner failed to prove a compensable injury arising out of her employment, and the commission decisions should therefore be reversed by this Honorable Court. Thank you very much, Your Honors. Thank you, Counsel. Counsel, you may respond. Good morning, Your Honor, Counsel. I'm sorry I'm getting over a cold. If I could just take a second in case I cough. I need some water. This is a manifest weight standard case, very clear, which I go into in depth because I felt as though it was hardly even addressed in my opponent's brief. And I normally wouldn't start here, but Counsel said something which was discussed in his brief, that I find so frustrating that I have to start here, this whole thing about being coached. I feel it's insulting. It's insulting to me. It's insulting to you. It's certainly insulting to Lori Zuckerman, who's a highly educated woman, and besides that, any reasonable person. She testified. She testified that three weeks after her accident, she went back to the stairwell and she took these pictures herself, which were entered into evidence. You can see very clearly from these pictures the concrete that is missing. It's not microscopic. These are lousy, amateur photos, and you can see it right here that the concrete is missing. And then if you look at the record, you'll see that the application for adjustment of claim was filed toward the end of July. She didn't have counsel at the time when she went to the stairwell three weeks later, and she saw that the concrete was missing. It's not about being coached. She saw it herself. She's a reasonable person. I think it's insulting, this whole coaching thing. And so that's why I'm starting here. I wasn't even going to say anything, but he mentioned it again, and, again, I feel that it's really insulting to not only put that in a brief, but to say it again, that a person was coached, to give an inference that a reasonable person would do something inappropriate when she didn't even have counsel at the time when she went back to the stairwell and took her own pictures and figured out what happened. The arbiter and the commission believed the claimant, correct? Yes. And she was found to be very, very credible. So that's what I have to say with regard to these microscopic divots and with regard to her coaching. Now, with regard to the statement, there's no inconsistent history here. If you look at her statement, and yes, she was in a hospital on six different medications, including three narcotic medications. This is the woman who testified that she was healthy. She was formerly an inline speed skater. She didn't take medication, and all of a sudden she's on all these medications, and she's asked to give a statement. And you look at her statement. It's a very simple question. You know, what's your height and weight? What's your educational level? I mean, these are very simple questions. She gives very simple answers. Where did you fall? She wasn't asked about her schedule for that day. She wasn't asked, you know, go through everything you were doing that day. Had she been asked possibly about her schedule, she would have answered that she had a meeting that day. So I don't think there's anything inconsistent about her testimony. She simply was asked a very simple line of questions, which you can read in the record, and she answered every single question. I don't think there's anything inconsistent when she's asked during her trial to tell us about your schedule. She was asked about her schedule at trial. She wasn't asked in her statement. That doesn't equate to inconsistent histories. Not only that, what I find very telling is in her statement while she's on this narcotic medication in the hospital, where did you fall? And she said it was on the first and second stair, and lo and behold, we go back to the stairwell, and we see there's missing concrete from the very stair she believed she fell from. So I think that actually the statement, when she's on all this medication, supports what she testified to, what, eight months after the occurrence took place? And the medical records, what, she's supposed to remember when she's on all this medication and she just fell and she's in a lot of pain and she doesn't even know the source of all the pain and what's injured? She's supposed to tell the doctors that she was in a hurry to get to a meeting that day? Who would even think to even ask these kind of questions in the hospital? You ask how did you fall, what hurts you? Not tell us about your schedule that day. How is that even relevant to what happened? So I don't feel that there's anything inappropriate that took place or any basis to find that the arbitrator made a decision and the commission affirmed that decision that wasn't supported by the evidence here. There's nothing to show that it's against the manifest weight of the evidence, which is what you're required to establish in order for this case to be reversed. I mean, I think this is a very simple case, and unfortunately it's now taken over two years for my client to get her back fits. Now with regard to the Baldwin case and the first cash case, in preparation for today I listened to the arguments in those cases, and in the Baldwin case what bothered this court was there was no defect that was shown in the stairs. Here, that's not the case. So these cases are not analogous. This case is not analogous to first cash and it's not analogous to Baldwin. And also with regard to Caterpillar, that's something the court stated in Caterpillar as well. There was no defect. It was a regular curb. The person should have known that at a curb there's going to be a dip in the curb. You step down and you maneuver from that. There was no defect. And that's what distinguishes this case from those other cases. They're not analogous. I believe had there been a defect in first cash, had there been a defect in Baldwin, possibly the court, or even in Caterpillar, possibly the court would have ruled differently. And I find that that's the distinction here. So, again, I don't believe that there's anything here to show that there wasn't sufficient evidence for the arbitrator and the commission to rely upon in making their determination that Laura Zuckerman's accident should be compensable and that it arose out of her employment. And I ask that you affirm the decision of the Workers' Compensation Commission. Thank you. I have a question because it's been asked. What's an ultra-distance inline skating marathon? I believe you would have to ask Laura that question. But I believe before the accident or over the years previously, she used to be an inline skater. I don't know if that was professional or recreational. But I believe as a hobby. She was a competitive speed skater but then participated in that. I just didn't know if you knew. I believe at one time she was a speed skater. I believe it was a hobby that she was involved with. She was in very good shape. And that's one of the reasons why she used to take the stairs because she was in such good shape from my understanding. But I would have to ask her to give you a more specific answer with regard to the speed skating. Thank you. Counsel, you may reply. Thank you. I just want to make two points. The first cash case was actually reversed by your honors on a de novo review. And that found erroneous as a matter of law. Not necessarily a manifest way of evidence case there. Not necessarily here under those circumstances as well. The second point I want to make, this whole conflicting histories isn't something that I made up or pulled out of thin air. This was the specific finding of the dissenting arbitrator in this case. And that's why I mentioned it in my brief and during oral arguments today. Thank you, your honors. Thank you, Counsel Bowles. This matter will be taken under advisement and written disposition shall issue. Court will stand at brief recess.